## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-cv-4341 |
| | ) | |
| v. | ) | |
| | ) | |
| 1825 CONNECTICUT AVE DELI, INC. | ) | |
| d/b/a/ SOHO CAFÉ & MARKET, | ) | |
| 1825 Connecticut Avenue, N.W. | ) | |
| Washington, DC 20009, | ) | |
| | ) | |
| Serve: Registered Agents Inc. | ) | |
| 1717 N Street, N.W., Suite 1 | ) | |
| Washington, DC 20036 | ) | |
| eastern@registeredagentsinc.com, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JINHO KIM, | ) | |
| 13906 Springhouse Court | ) | |
| Clifton, VA 20124-2459, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>COMPLAINT</u>

Plaintiff, the United States of America, by and through its undersigned attorney, hereby

sets forth its Complaint for Breach of Contract against Defendants: (a) 1825 Connecticut Ave Deli,

Inc. d/b/a Soho Café & Market, and (b) Jinho Kim (hereinafter "Defendants" or "Debtors") and

states as follows:

1.    This action arises under federal law and is brought by the United States to recover

on a defaulted Small Business Administration loan.

2.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §

1345, which grants District Courts original jurisdiction over civil actions commenced by the

United States or any agency thereof.

3.      Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391, as the Defendants reside in or a substantial part of the events giving rise to the claim occurred in this judicial district.

4.      Plaintiff is the United States of America, acting through the Department of the Treasury's Bureau of the Fiscal Service (hereinafter "Treasury") and on behalf of the U.S. Small Business Administration (hereinafter also: "SBA"). The debt at issue here was referred to the Treasury in accordance with the Debt Collections Improvement Act of 1996 (DCIA) (31 U.S.C. § 3701 *et seq.*).

5.      Defendant 1825 Connecticut Ave Deli, Inc. d/b/a Soho Café & Market (hereinafter also "Soho Café ") is a business located in Washington, DC within the jurisdiction of this Court and may be served with service of process at: Registered Agents Inc., 1717 N Street, N.W., Suite 1, Washington, DC 20036.

6.      Defendant Jinho Kim is an individual, owner of and resident of Virginia who may be served with service of process at: 13906 Springhouse Court, Clifton, VA 20124-2459.

**FACTS**

7.      On February 6, 2019, Defendants executed a Promissory Note and Guarantee loan agreement (collectively also: "the Note") for $180,000.00 with interest accruing at variable rates, except as otherwise provided within the Promissory Note and Guarantee with Bank of Hope ("Lender"). *See* Exhibit "**A**" attached hereto and incorporated herein.

8.      On July 6, 2020, the Debtor(s) became delinquent to Lender on the aforementioned obligation, with a balance due of $124,032.37. Due to this delinquency, the SBA had to pay the guaranteed interest and became holder of the Promissory Note and Guarantee loan. *See* Exhibit "**B**" attached hereto and incorporated herein. SBA referred the debt to Treasury on January 18,

2

2023.

9.      On June 26, 2025 Treasury referred the debt to U.S. Department of Justice (hereinafter "DOJ") for litigation and collection in the amount of $124,032.37 with a daily interest of $17.84. As of June 27, 2025, the Debtor(s) became indebted to the United States in the following amounts:

### Debt #1– TRFM16036099

| | |
|---|---|
| Current Principal: | $124,032.37 |
| Current Interest (at 5.25%): | $16,987.96 |
| Admin Fees: | $50,883.63 |
| **TOTAL DUE (as of 6/27/2025)** | **$191,903.96** |

as set forth in the Certificate of Indebtedness prepared by the U.S. Department of the Treasury Bureau of Fiscal Service. *See* Exhibit "**C**" attached hereto and incorporated herein.

10.      Plaintiff has made demand upon the Defendants for the full amount of this claim, but Defendants has failed to make payments on the Note.

11.      All conditions precedent to the commencement of this action have been performed by the Plaintiff.

12.      The Defendants failed to make timely payments as required by the Note.

### COUNT I
### (Breach of Contract)

13.      Plaintiff incorporates by reference the allegations contained in the preceding paragraphs.

14.      The Note and guarantee constitute a valid and enforceable contract.

15.      Defendants were obligated to make timely payments under the terms of the Note

and guarantee.

16.    Defendants breached their contractual duties by failing to make the required payments.

17.    As a direct and proximate result of the Defendants' breach, the Plaintiff has suffered and continues to suffer monetary damages.

18.    The outstanding balance, including principal, accrued interest, and other charges, remains unpaid.

### Prayer for Relief

WHEREFORE, the United States of America respectfully requests that this Court enter a judgment against the Defendants for TRFM16036099 in the amount of $191,903.96 plus prejudgment interest through the date of judgment, all administrative costs allowed by law, post judgment interest pursuant to 28 U.S.C. § 1961 (and that interest on the judgment be at the legal rate until paid in full), for all attorney's fees to the extent allowed by law, for the filing fee of $405.00 as permitted by 28 U.S.C. § 2412 (a)(2), and for such other relief which the Court deems just and proper.

Date: December 15, 2025            Respectfully submitted,

                    By:    *s/ William R. Cowden*
                           William R. Cowden (DC Bar #426301)
                           Schuerger Law Group
                           Private Counsel – U.S. Department of Justice
                           1001 Kingsmill Parkway
                           Columbus, OH 43229
                           Phone: (614) 674-6901
                           Email: wcowden@schuergerlaw.com
                                  efiling@schuergerlaw.com
                           *Attorney for Plaintiff*

### U.S. Small Business Administration
## AUTHORIZATION
### (SBA Express/Export Express Loan)

SBA Loan# 35107370-05
U.S. Small Business Administration
**Fresno Commercial Loan Center**
**801 R Street Suite 101**
**Fresno, CA 93721**

Lender:
**Bank of Hope**
**3200 Wilshire Blvd. 7th Floor**
**Los Angeles, CA 90010**

Lender is issuing this SBA Express or Export Express Loan Authorization for SBA to guarantee 50% of a loan in the amount of **$180,000** to be made by Lender to assist:

Borrower:    **1825 Connecticut Ave Deli Inc**
             **DBA: Soho Café & Market**
             **1825 Connecticut Ave. NW #250B**
             **Washington, DC 20009**

Lender must have a valid SBA Loan Guarantee Agreement (SBA Form 750 and 750B for short term loans, if applicable), and a valid SBA Express Supplemental Loan Guaranty Agreement (SBA Form 2424) or Export Express Supplemental Loan Guaranty Agreement (SBA Form 2426) (depending on the type of loan).

Lender's issuance is in accordance with the SBA Express Supplemental Loan Guaranty Agreement between Lender and SBA for an SBA Express Loan, or the SBA Export Express Supplemental Loan Guaranty Agreement between Lender and SBA for an Export Express Loan.

Lender must comply with all SBA Loan Program Requirements, as defined in 13 CFR 120.10, all of which may be amended from time to time.

This Authorization is subject to the application (including SBA Form 1919) submitted by Borrower to the Lender, the Lender's representations to SBA, and the following terms and conditions:

1.    Lender must make first disbursement of the loan no later than **12 months**, and complete disbursement no later than **12 months**, from the date of this Authorization. For a revolving line of credit loan, Lender must make no disbursement of this loan beyond the maturity date.

2.    The GUARANTEE FEE IS: **$2,700.00**

Lender must pay the guarantee fee within 90 days of the approval date of this Authorization. Failure to timely pay the guarantee fee will result in cancellation of the SBA guarantee. The 90-day deadline may not be extended. Lenders are required to make their payments electronically. Payment can be made at www.pay.gov or by ACH if they have previously enrolled with the SBA. No part of the guarantee fee is refundable if Lender has made any disbursement. Lender may collect this fee from Borrower after initial disbursement of Loan; however, when an escrow closing is used, Lender may not collect the fee until all Loan funds have been disbursed to the Borrower from the escrow account. Borrower may use Loan proceeds to reimburse Lender for the guarantee fee.

**EXHIBIT _A_**

For loans with a maturity of 12 months or less, Lender must pay the guarantee fee within 10 business days from the date the SBA loan number is assigned and before signing this Authorization. No guarantee exists if Lender has not timely paid the guarantee fee in full. SBA will not refund the guarantee fee after the date of this Authorization except as provided in SOP 50 10. Payment of the guarantee fee is not contingent upon disbursement. Lender may collect this fee from Borrower upon receipt of the SBA loan number. Borrower may use loan proceeds to reimburse Lender for the guarantee fee.

For loans of $150,000 or less with a maturity of more than 12 months, Lender may retain 25% of any required guarantee fee but must remit the remainder to SBA.

3.    ON GOING SERVICING FEE

   1.   Lender agrees to pay SBA an ongoing fee equal to 0.550 of one percent per year of the guaranteed portion of the outstanding balance.

   2.   Lender may not charge or otherwise pass through this fee to Borrower.

4.    Lender must have Borrower execute a Note containing the following repayment terms:

Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 44 payments of $4,600.55 each payment. Borrower's first payment is due March 6th, 2019 and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be 4,599.69 due on November 5th, 2022 and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each CALENDAR QUARTER (THE "CHANGE PERIOD"). Lender will adjust the interest rate on the first calendar day of each change period. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 5.50% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.00 percentage points over the Index, resulting in an initial rate of 7.50%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**EXHIBIT** 

Upon prepayment of this Note, Lender is entitled to the following prepayment fee: Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If borrower prepays more than 20 percent and the loan has been sold on the secondary market, Borrower must:

a. Give Lender written notice;
b. Pay all accrued interest; and
c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

5.    Lender must develop and maintain evidence of a system or process to reasonably ensure that proceeds of loan were used for the following eligible business purposes:

**Working Capital**

6.    Lender must satisfy the following collateral conditions:

1.    **First Perfected Security Interest, subject to no other liens, in the following** personal property (including any proceeds and products), whether now owned or later acquired, wherever located:
Equipment; Inventory; Accounts; Instrument, Chattel Paper; General Intangibles;

a.    Lender must obtain a list of all equipment and fixtures that are collateral for the Loan. For items with a unit value of $5,000 or more, the list must include a description and serial number, if applicable.

b.    Lender must obtain an appropriate Uniform Commercial Code lien search evidencing all required lien positions. If UCC search is not available, another type of lien search may be substituted

2.    **Guarantee by**    **Jin Ho Kim**

LENDER

By: _____    2/5/2019
    (Authorized Signature)    (Date)

Sylvester Kim, SVP & SBA Manager
    (Name Print/Title)

**EXHIBIT** _A_

CSNG 16036099

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $180,000.00 | 02-06-2019 | 03-05-2022 | 320583738 | | 3510737036 | NEON | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** 1825 CONNECTICUT AVE DELI INC
1825 CONNECTICUT AVENUE, N.W., #250B
WASHINGTON, DC 20009

**Lender:** Bank of Hope
3731 Wilshire Blvd., Suite 400
Los Angeles, CA 90010

---

**Principal Amount: $180,000.00**                **Date of Note: February 6, 2019**

**PROMISE TO PAY.** 1825 CONNECTICUT AVE DELI INC ("Borrower") promises to pay to Bank of Hope ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Eighty Thousand & 00/100 Dollars ($180,000.00), together with interest on the unpaid principal balance from February 6, 2019, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 44 monthly consecutive principal and interest payments in the initial amount of $4,600.55 each, beginning March 6, 2019, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 5.500%), plus a margin of 2.000 percentage points, resulting in an initial interest rate of 7.500%; and one principal and interest payment of $4,699.89 on November 5, 2022, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate (currently 5.500%), plus a margin of 2.000 percentage points, resulting in an initial interest rate of 7.500%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each calendar quarter (the "Change Period"). Lender will adjust the interest rate on the first calendar day of each change period, beginning with the first calendar day of the calendar quarter following the initial disbursement. Borrower understands that Lender may make loans based on other rates as well. The index currently is 5.500% per annum. The interest rate to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT FEE.** Upon prepayment of this Note, Lender is entitled to the following prepayment fee: Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the loan has been sold, Borrower must:

a. Give Lender written notice;
b. Pay all accrued interest; and
c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bank of Hope (Attn: Loan Servicing Dept.), 3731 Wilshire Blvd., #420 Los Angeles, CA 90010.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. After maturity, or after this Note would have matured had there been no default, the Default Rate Margin will continue to apply to the final interest rate described in this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.



**EXHIBIT A**

# PROMISSORY NOTE
## (Continued)

Loan No: 320567739                                                          Page 2

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: inventory, chattel paper, accounts, equipment and general intangibles described in a Commercial Security Agreement dated February 6, 2019.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Bank of Hope (Attn: Credit Administration Dept) 8200 Wilshire Blvd Los Angeles, CA 90010.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**EXHIBIT** *A*

## PROMISSORY NOTE
### (Continued)

Loan No: 320587739                                                                          Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**BORROWER:**

1825 CONNECTICUT AVE DELI INC

By: _____
JIN HO KIM, President & Secretary of 1825
CONNECTICUT AVE DELI INC

LaserPro, Ver. 13.1.0.029   Copr. Finstra USA Corporation 1997, 2013.  All Rights Reserved.  - CA  C:\CFI\LPL\E20.FC TR-9887 PR-7

EXHIBIT A

# U.S. Small Business Administration

## Lender's Transcript of Account

| Name of Borrower(s) | | | | | | Loan Number | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1825 Connecticut Ave Deli Inc dba Soho Café & Market | | | | | | 35107370-05 | | | |

| Name of Lender | | | | | | Amount of Loan | | | Int. Days Basis |
|---|---|---|---|---|---|---|---|---|---|
| Bank of Hope | | | | | | $180,000.00 | | | 365/365 |

**Repayment Terms as Stated in the Note**

Note date: 2/6/2019
Maturity Date: 11/5/2022
Interest Rate: WSJP+ 2.000%
Principal & Interest: $4,600.55

**Approved Deferment Periods:** N/A

**Default Date (Next Payment Due Date):** 7/6/2020

| Date | Amount Disbursed | Amount Repaid | Deferment (Begin/End) | Application of Payment Principal | Application of Payment Interest | Int. Rate | Interest Paid From | Interest Paid To | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|
| 02/12/19 | $180,000.00 | | | | | 7.50% | | | $180,000.00 |
| 03/06/19 | | $4,600.55 | | $3,786.86 | $813.69 | | 02/12/19 | 03/06/19 | $176,213.14 |
| 04/08/19 | | $4,600.55 | | $3,405.69 | $1,194.86 | | 03/06/19 | 04/08/19 | $172,807.45 |
| 05/06/19 | | $4,593.50 | | $3,599.27 | $994.23 | | 04/08/19 | 05/06/19 | $169,208.18 |
| 06/06/19 | | $4,593.50 | | $3,515.67 | $1,077.83 | | 05/06/19 | 06/06/19 | $165,692.51 |
| 07/08/19 | | $4,593.50 | | $3,504.02 | $1,089.48 | | 06/06/19 | 07/08/19 | $162,188.49 |
| 08/06/19 | | $4,593.31 | | $3,626.85 | $966.46 | | 07/08/19 | 08/06/19 | $158,561.64 |
| 09/06/19 | | $4,593.31 | | $3,583.30 | $1,010.01 | | 08/06/19 | 09/06/19 | $154,978.34 |
| 10/01/19 | Rate Change | | | | | 7.00% | | | |
| 10/07/19 | | $4,593.31 | | $3,618.86 | $974.45 | | 09/06/19 | 10/07/19 | $151,359.48 |
| 11/06/19 | | $4,559.11 | | $3,688.28 | $870.83 | | 10/07/19 | 11/06/19 | $147,671.20 |
| 12/06/19 | | $4,559.11 | | $3,709.50 | $849.61 | | 11/06/19 | 12/06/19 | $143,961.70 |
| 01/01/20 | Rate Change | | | | | 6.75% | | | |
| 04/01/20 | Rate Change | | | | | 5.25% | | | |
| 04/30/20 | 1st SBA 1112 | $4,559.11 | | $818.10 | $3,741.01 | | 12/06/19 | 04/30/20 | $143,143.60 |
| 05/27/20 | 2nd SBA 1112 | $4,444.04 | | $3,888.14 | $555.90 | | 04/30/20 | 05/27/20 | $139,255.46 |
| 05/28/20 | 3rd SBA 1112 | $99.64 | | $79.62 | $20.02 | | 05/27/20 | 05/28/20 | $139,175.84 |
| 06/22/20 | 3rd SBA 1112 | $4,359.83 | | $3,859.37 | $500.46 | | 05/28/20 | 06/22/20 | $135,316.47 |
| 07/23/20 | 4th SBA 1112 | $4,459.47 | | $3,856.11 | $603.36 | | 06/22/20 | 07/23/20 | $131,460.36 |
| 08/21/20 | 5th SBA 1112 | $4,474.21 | | $3,925.86 | $548.35 | | 07/23/20 | 08/21/20 | $127,534.50 |
| 09/24/20 | 6th SBA 1112 | $4,474.21 | | $3,850.52 | $623.69 | | 08/21/20 | 09/24/20 | $123,683.98 |
| 02/24/21 | DDA LIQUIDATE | $1,142.81 | | $1,142.81 | $0.00 | | 09/24/20 | 09/24/20 | $122,541.17 |

I Certify This to be a True Copy of Transcript of Account

James Lim
Digitally signed by James Lim
Date: 2022.07.20 09:48:17 -07'00'

Signature

James Lim, Special Assets Officer I

Title

7/20/2022

Date


EXHIBIT A

CSNG 16036099

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $88,000.00 | 02-08-2019 | 11-05-2021 | 1305627390 | | 6510757905 | DIXON | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Grantor: | 1825 CONNECTICUT AVE DELI INC | Lender: | Bank of Hope |
|---|---|---|---|
| | 1825 CONNECTICUT AVENUE, N.W., #250B | | 3731 Wilshire Blvd., Suite 400 |
| | WASHINGTON, DC 20009 | | Los Angeles, CA 90010 |

THIS COMMERCIAL SECURITY AGREEMENT dated February 6, 2019, is made and executed between 1825 CONNECTICUT AVE DELI INC ("Grantor") and Bank of Hope ("Lender").

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

FUTURE ADVANCES. In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL. With respect to the Collateral, Grantor represents and promises to Lender that:

Perfection of Security Interest. Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

Notices to Lender. Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

No Violation. The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

Enforceability of Collateral. To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account

EXHIBIT A

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: 320587739                                                                    Page 2

becomes subject to a security Interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the District of Columbia, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.


EXHIBIT A

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: 320587739                                                                 Page 3

Application of Insurance Proceeds.  Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by Insurance.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  All proceeds of any Insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral.  If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration.  If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor.  Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

Insurance Reports.  Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of Insurance showing such information as Lender may reasonably request including the following:  (1) the name of the Insurer;  (2) the risks insured;  (3) the amount of the policy;  (4) the property Insured;  (5) the then current value on the basis of which Insurance has been obtained and the manner of determining that value; and  (6) the expiration date of the policy.  In addition, Grantor shall upon request by Lender (however not more often than annually) have an Independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

Financing Statements.  Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest.  At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property.  Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs.  Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default.  Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.**  Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral.  Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts.  At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness.  If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care.  Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's Interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Agreement also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.**  Each of the following shall constitute an Event of Default under this Agreement:

Payment Default.  Grantor fails to make any payment when due under the Indebtedness.

Other Defaults.  Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

Default in Favor of Third Parties.  Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

False Statements.  Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Defective Collateralization.  This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Insolvency.  The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness.  This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor.  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

Adverse Change.  A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity.  Lender in good faith believes itself insecure.

**EXHIBIT A**

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: 320587739                                                                                    Page 4

Cure Provisions. If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the District of Columbia Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

Accelerate Indebtedness. Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, after giving all required notices of default and after passage of any grace period.

Assemble Collateral. Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

Sell the Collateral. Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Collect Revenue, Apply Accounts. Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

Obtain Deficiency. If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

Other Rights and Remedies. Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

Election of Remedies. Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

Amendments. This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Attorneys' Fees; Expenses. Grantor agrees that if Lender hires an attorney to help enforce this Agreement, Grantor will pay, subject to any limits under applicable law, Lender's reasonable attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit and including without limitation additional legal expenses for bankruptcy proceedings.

Caption Headings. Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

Governing Law. With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Collateral, this Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the District of Columbia. In all other respects, this Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of California.

Choice of Venue. If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.



EXHIBIT A

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: 320587739                                                                    Page 5

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Notices. Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

Power of Attorney. Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photograph or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

Severability. If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

Successors and Assigns. Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

Time is of the Essence. Time is of the essence in the performance of this Agreement.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

Agreement. The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

Borrower. The word "Borrower" means 1825 CONNECTICUT AVE DELI INC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Collateral. The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

Default. The word "Default" means the Default set forth in this Agreement in the section titled "Default".

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

Grantor. The word "Grantor" means 1825 CONNECTICUT AVE DELI INC.

Guarantor. The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note and all future advances made pursuant to the Note or any renewal, extension or modification thereof, including all principal and interest, together with all other indebtedness and cost and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

Lender. The word "Lender" means Bank of Hope, its successors and assigns.

Note. The word "Note" means the Note dated February 6, 2019 and executed by 1825 CONNECTICUT AVE DELI INC in the principal

EXHIBIT A

CSNG 16036099

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

| Loan No: 320587739 | | Page 6 |
|---|---|---|

amount of $180,000.00, together with all modifications of and renewals, replacements, and substitutions for the note or credit agreement.

Property. The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED FEBRUARY 6, 2019.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

1825 CONNECTICUT AVE-DELI INC

By: _____ (Seal)
JIN HO KIM, President & Secretary of 1825
CONNECTICUT AVE DELI INC

LENDER:

BANK OF HOPE

X _____
Authorized Signer

LaserPro, Ver. 18.1.0.025  Copr. Finastra USA Corporation 1997, 2019.  All Rights Reserved.  - DC/GA  D:\LPI\CFI\LPL\E03.FC  TR-22846  PR-27

EXHIBIT A

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $130,000.00 | 02-06-2019 | 05-2022 | 320587730 | | 3610/370-051 | WECN | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

| Borrower: | 1825 CONNECTICUT AVE DELI INC<br>1825 CONNECTICUT AVENUE, N.W., #250B<br>WASHINGTON, DC 20009 | Lender: | Bank of Hope<br>3731 Wilshire Blvd., Suite 400<br>Los Angeles, CA 90010 |
|---|---|---|---|
| Guarantor: | JIN HO KIM<br>13906 SPRINGHOUSE COURT<br>CLIFTON, VA 20124 | | |

CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE. For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order; on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

INDEBTEDNESS. The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

CONTINUING GUARANTY. THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

DURATION OF GUARANTY. This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. Guarantor's obligations under this Guaranty shall be in addition to any of Guarantor's obligations, or any of them, under any other guaranties of the Indebtedness or any other person heretofore or hereafter given to Lender unless such other guaranties are modified or revoked in writing; and this Guarantor shall not, unless provided in this Guaranty, affect, invalidate, or supersede any such other guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

OBLIGATIONS OF MARRIED PERSONS. Any married person who signs this Guaranty hereby expressly agrees that recourse under this Guaranty may be had against both his or her separate property and community property.

GUARANTOR'S AUTHORIZATION TO LENDER. Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties,

EXHIBIT A

## COMMERCIAL GUARANTY
### (Continued)

| Loan No: 320567739 | | Page 2 |
|---|---|---|

endorsers, or other guarantors on any terms or in any manner Lender may choose;   (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness;  (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine;   (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and   (H)  to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.**  Guarantor represents and warrants to Lender that  (A)  no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty;  (B)  this Guaranty is executed at Borrower's request and not at the request of Lender;  (C)  Guarantor has full power, right and authority to enter into this Guaranty;  (D)  the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor;  (E)  Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein;  (F)  upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided;  (G)  no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition;  (H)  no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened;  (I)  Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and  (J)  Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition.  Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.**  Except as prohibited by applicable law, Guarantor waives any right to require Lender to  (A)  make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness;  (B)  proceed against any person, including Borrower, before proceeding against Guarantor;  (C)  proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Guarantor;  (D)  apply any payments or proceeds received against the Indebtedness in any order;  (E)  give notice of the terms, time, and place of any sale of the collateral pursuant to the Uniform Commercial Code or any other law governing such sale;  (F)  disclose any information about the Indebtedness, the Borrower, the collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or  (G)  pursue any remedy or course of action in Lender's power whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of  (H)  any disability or other defense of Borrower, any other guarantor or surety or any other person;  (I)  the cessation from any cause whatsoever, other than payment in full, of the Indebtedness;  (J)  the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Guarantor and Lender;  (K)  any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise;  (L)  any statute of limitations in any action under this Guaranty or on the Indebtedness; or  (M)  any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate, and including any such modification or change in terms after revocation of this Guaranty on the Indebtedness incurred prior to such revocation.

Guarantor waives all rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive.

Guarantor waives all rights and any defenses arising out of an election of remedies by Lender even though that the election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

Guarantor waives all rights and defenses that Guarantor may have because Borrower's obligation is secured by real property.  This means among other things:  (N)  Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower.  (O)  If Lender forecloses on any real property collateral pledged by Borrower,  (1)  the amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price,  (2)  Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower.  This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's obligation is secured by real property.  These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Guarantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Guarantor might otherwise be entitled under state and federal law.  The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code.  Guarantor acknowledges that Guarantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender.  Guarantor further understands and agrees that this Guaranty is a separate and independent contract between Guarantor and Lender, given for full and ample consideration, and is enforceable on its own terms.  Until all of the Indebtedness is paid in full, Guarantor waives any right to enforce any remedy Guarantor may have against the Borrower or any other guarantor, surety, or other person, and further, Guarantor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**Guarantor's Understanding With Respect To Waivers.**  Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law.  If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**Right of Setoff.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**Subordination of Borrower's Debts to Guarantor.**  Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent.  Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that

**EXHIBIT** *A*

## COMMERCIAL GUARANTY
## (Continued)

Loan No: 320587739                                                                                                      Page 3

Lender may now or hereafter have against Borrower. In the event of Insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and that applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

Miscellaneous Provisions. The following miscellaneous provisions are a part of this Guaranty:

AMENDMENTS. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

ATTORNEYS' FEES; EXPENSES. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

CAPTION HEADINGS. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

GOVERNING LAW. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.

CHOICE OF VENUE. If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

INTEGRATION. Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

INTERPRETATION. In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

NOTICES. Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

NO WAIVER BY LENDER. Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

SUCCESSORS AND ASSIGNS. Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

Definitions. The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

BORROWER. The word "Borrower" means 1826 CONNECTICUT AVE DELI INC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

GUARANTOR. The word "Guarantor" means everyone signing this Guaranty, including without limitation JIN HO KIM, and in each case, any signer's successors and assigns.

GUARANTY. The word "Guaranty" means this guaranty from Guarantor to Lender.

INDEBTEDNESS. The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.


EXHIBIT A

## COMMERCIAL GUARANTY
Loan No: 320587739                                    (Continued)                                             Page 4

LENDER. The word "Lender" means Bank of Hope, its successors and assigns.

NOTE. The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

RELATED DOCUMENTS. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED FEBRUARY 6, 2019.

GUARANTOR:

X _____
JIN HO KIM


EXHIBIT

# ASSIGNMENT

## U.S. Small Business Administration

FOR VALUE RECEIVED, in accordance with SBA Form 750 executed by

Name of Lender:    Bank of Hope

("Lender" or "Assignor"), and in accordance with Loan Program Requirements, as that term is defined in
13 C.F.R. Part 120, Lender assigns, grants, conveys and transfers to the Assignee, the U.S. Small Business
Administration ("SBA"), all right, title and interest in and to SBA 7(a) Loan

Number: 3510737005    made to   Name of Borrower: 1825 Connecticut Ave Delic Inc d/b/a Soho Cafe & Market

on  Date:    7/20/22    , including all Loan Documents, Loan Instruments, and any associated security
instruments, mortgages or deeds of trust (the "Loan").

Assignor authorizes the United States of America on behalf of the SBA to ask, demand, receive, collect, sue and
take all lawful actions for recovery of the moneys due or to become due on this Loan, and further that the United
States of America on behalf of the SBA may avail itself of its remedies under 31 U.S.C. § 3701, et seq., and/or
any other remedies available at law or equity for collection of the Loan and the claim or debt evidenced by the
Loan.

Assignor has not done and will not do anything to hinder or prevent the United States of America on behalf of
the SBA from enforcing recovery on this Loan. Assignor agrees to timely execute such other documents as are
requested by SBA to effectuate recordation or as otherwise requested by SBA to assist it in collection of the
Loan. Any proceeds, payment or value of any kind with respect to the Loan or obligations secured or evidenced
thereby that are received by Assignor or Assignee shall continue to be shared in accordance with the SBA Form
750 guarantee agreement covering this loan. The Assignor agrees that SBA reserves all rights and authority
under 13 C.F.R. Part 120, including without limitation under 13 C.F.R. § 120.524. This Assignment shall be
interpreted and construed under federal law.

The Assignor's address is:

| Lender Name | Bank of Hope |
|---|---|
| Address | 3200 Wilshire Blvd., 6th FL. |
| City | Los Angeles |
| State | CA |
| Zip | 90010 |

**EXHIBIT** 

CSNG 16036099

The Assignee address is: United States of America, Small Business Administration,
(Please mark the applicable address)

National Guaranty Purchase Center (NGPC)
☐ 1145 Herndon Parkway Suite 900
Herndon, VA 20170

Commercial Loan Service Center (CLSC) - AR
☑ 2120 Riverfront Drive Suite 100
Little Rock, AR 72202

Commercial Loan Service Center (CLSC) - CA
☐ 801 R Street Suite 101
Fresno, CA 93721

In witness whereof, Lender, through its authorized representative and officer listed below, has executed this instrument
on Date:    7/20/22

| Name of Lender: | Bank of Hope |
| --- | --- |
| BY: | Ki Wook Lee |
| Title: | SVP & Portfolio Manager |
| Address | 3200 Wilshire Blvd., 6th FL. |
| City | Los Angeles |
| State | CA |
| Zip Code | 90010 |

Signed, sealed and delivered in the presence of:

NOTARY PUBLIC

Commission Expires:

See Attached



## Addendum

☐ Lender ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ also assigns the following judgment(s) obtained on the underlying Loan ("Judgment"):

      Against: ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

      Court: ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

      Index No./Case No. ▨▨▨▨▨▨▨▨▨▨

      Date: ▨▨▨▨▨▨▨▨▨▨▨▨▨

      Amount: $ ▨▨▨▨▨▨▨▨▨▨▨

☐ A portion of the underlying obligation that resulted in the Judgment was a loan that was not guaranteed by the SBA. Therefore, Lender retains the sum of $ ▨▨▨▨▨▨ that was awarded in the Judgment.

Lender understands that certain jurisdictions may require additional actions to assign judgments, and Lender agrees to take further actions as appropriate, if requested by Assignee.

**EXHIBIT** $B$

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA

COUNTY OF ___Los Angeles_____

On ____July 20, 2022_____ before me, ____Un Shil Kang, Notary Public___ personally appeared

_____Ki Wook Lee____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____𝒰.𝒮.____

Signature of Notary Public

UN SHIL KANG
Notary Public - California
Los Angeles County
Commission # 2302337
My Comm. Expires Sep 17, 2023

EXHIBIT B

# U.S. Small Business Administration

## Lender's Transcript of Account

| Name of Borrower(s) | | | | | | Loan Number | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1825 Connecticut Ave Deli Inc dba Soho Café & Market | | | | | | 35107370-05 | | | |
| Name of Lender | | | | | | Amount of Loan | | | Int. Days Basis |
| **Bank of Hope** | | | | | | $180,000.00 | | | 365/365 |

Repayment Terms as Stated in the Note

| | |
| --- | --- |
| Note date: | 2/6/2019 |
| Maturity Date: | 11/5/2022 |
| Interest Rate: | WSJP+ 2.000% |
| Principal & Interest: | $4,600.55 |

| Approved Deferment Periods: | N/A |
| --- | --- |

| Default Date (Next Payment Due Date): | 7/6/2020 |
| --- | --- |

| Date | Amount Disbursed | Amount Repaid | Deferment (Begin/End) | Application of Payment | | Int. Rate | Interest Paid | | Principal Balance |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | Principal | Interest | | From | To | |
| 02/12/19 | $180,000.00 | | | | | 7.50% | | | $180,000.00 |
| 03/06/19 | | $4,600.55 | | $3,786.86 | $813.69 | | 02/12/19 | 03/06/19 | $176,213.14 |
| 04/08/19 | | $4,600.55 | | $3,405.69 | $1,194.86 | | 03/06/19 | 04/08/19 | $172,807.45 |
| 05/06/19 | | $4,593.50 | | $3,599.27 | $994.23 | | 04/08/19 | 05/06/19 | $169,208.18 |
| 06/06/19 | | $4,593.50 | | $3,515.67 | $1,077.83 | | 05/06/19 | 06/06/19 | $165,692.51 |
| 07/08/19 | | $4,593.50 | | $3,504.02 | $1,089.48 | | 06/06/19 | 07/08/19 | $162,188.49 |
| 08/06/19 | | $4,593.31 | | $3,626.85 | $966.46 | | 07/08/19 | 08/06/19 | $158,561.64 |
| 09/06/19 | | $4,593.31 | | $3,583.30 | $1,010.01 | | 08/06/19 | 09/06/19 | $154,978.34 |
| 10/01/19 | **Rate Change** | | | | | 7.00% | | | |
| 10/07/19 | | $4,593.31 | | $3,618.86 | $974.45 | | 09/06/19 | 10/07/19 | $151,359.48 |
| 11/06/19 | | $4,559.11 | | $3,688.28 | $870.83 | | 10/07/19 | 11/06/19 | $147,671.20 |
| 12/06/19 | | $4,559.11 | | $3,709.50 | $849.61 | | 11/06/19 | 12/06/19 | $143,961.70 |
| 01/01/20 | **Rate Change** | | | | | 6.75% | | | |
| 04/01/20 | **Rate Change** | | | | | 5.25% | | | |
| 04/30/20 | 1st SBA 1112 | $4,559.11 | | $818.10 | $3,741.01 | | 12/06/19 | 04/30/20 | $143,143.60 |
| 05/27/20 | 2nd SBA 1112 | $4,444.04 | | $3,888.14 | $555.90 | | 04/30/20 | 05/27/20 | $139,255.46 |
| 05/28/20 | 3rd SBA 1112 | $99.64 | | $79.62 | $20.02 | | 05/27/20 | 05/28/20 | $139,175.84 |
| 06/22/20 | 3rd SBA 1112 | $4,359.83 | | $3,859.37 | $500.46 | | 05/28/20 | 06/22/20 | $135,316.47 |
| 07/23/20 | 4th SBA 1112 | $4,459.47 | | $3,856.11 | $603.36 | | 06/22/20 | 07/23/20 | $131,460.36 |
| 08/21/20 | 5th SBA 1112 | $4,474.21 | | $3,925.86 | $548.35 | | 07/23/20 | 08/21/20 | $127,534.50 |
| 09/24/20 | 6th SBA 1112 | $4,474.21 | | $3,850.52 | $623.69 | | 08/21/20 | 09/24/20 | $123,683.98 |
| 02/24/21 | **DDA LIQUIDATE** | $1,142.81 | | $1,142.81 | $0.00 | | 09/24/20 | 09/24/20 | $122,541.17 |

| I Certify This to be a True Copy of Transcript of Account | | |
| --- | --- | --- |
| James Lim  Digitally signed by James Lim  Date: 2022.07.20 09:48:17 -07'00' | James Lim, Special Assets Officer I | 7/20/2022 |
| Signature | Title | Date |


EXHIBIT B



CSNG#16036099

**Lender's Application for Loan Guaranty**
**For all 7(a) Loan Programs**

OMB Control No.: 3245-0348
Expiration Date: 07/31/2020

The purpose of this form is to collect identifying information about the Lender, information about the loan guaranty request, sources and uses of funds, the proposed structure (which includes pricing and the loan term), the Small Business Applicant, and compliance with SBA Loan Program Requirements. Submission of the requested information is required for SBA or the Lender to make a determination regarding eligibility for financial assistance and the appropriate processing method (delegated or non-delegated). Failure to submit the information would affect those determinations.

Instructions for Lenders:

- For all loans submitted to the 7(a) Loan Guaranty Processing Center ("LGPC"), by Delegated and Non-Delegated Lenders: This form is to be completed, in its entirety, signed and dated prior to electronic submission to the LGPC. The original of this form must be retained in your loan file.
  Submission instructions are provided at https://www.sba.gov/sites/default/files/forms/LGPC_Submission_Instructions.pdf.

- For all loans processed under delegated authority (PLP, SBA Express, Export Express, PLP–EWCP, and Community Advantage delegated authority): This form is to be completed, in its entirety, signed and dated, and retained in your loan file.

| A. Processing Method | | Processing Options (if applicable) | | |
|---|---|---|---|---|
| ☐ 7(a) Non-Delegated Processing | ☑ | 7(a) Small Loan ($350,000 or less with an acceptable credit score) | | |
| | | Capline is not available for Small or Community Advantage Loan Programs | ☑ SBA Express ☐ Revolving ☑ Term Loan | ☐ Export Express ☐ Revolving ☐ Term Loan |
| ☑ 7(a) Delegated Processing | ☐ | International Trade Loan | ☐ Export Working Capital Program (EWCP) Loan | |
| | | Capline is not available for Small or Community Advantage Loan Programs | | |
| | ☐ | Other (Explain): | | |

| B. | | Applicant Business Information | | |
|---|---|---|---|---|
| **Applicant Business** | ☐ Startup Business (Not opened yet)   ☑ Existing Business (more than 2 years old) | | Date Business Established: | 07/19/2013 |
| | ☐ New Business (2 years or less)   ☐ Change of Ownership | | Date Current Ownership Established: | 07/19/2013 |
| | Applicant Business Legal Name: 1825 Connecticut Ave Deli Inc | ☐ Check if EPC | NAICS Code: | 722513 |
| | DBA: Soho Cafe & Market | | Business Tax ID: | ▮481 |
| | Applicant Address: 1825 Connecticut Ave. NW #250B | City, ST, Zip: Washington, DC 20009 | | |
| | Business Location: ☐ Rural ☑ Urban | Legal Structure: ☐ Sole Proprietor ☐ Partnership ☑ Corp ☐ LLC ☐ Other | | |
| | Applicant Primary Contact: Jin Ho Kim | Primary Contact Phone: ( ) 309 - 6473 | | |
| | # of employees prior to this loan: 13   # of jobs created because of this loan: 0   # of jobs retained because of this loan: 13 | | | |
| **Other** | ☐ OC / ☐ Co-Applicant: | ☐ Sole Proprietor ☐ Partnership ☐ Corp ☐ LLC ☐ Other | | |
| | Co-Applicant Address: | Business Tax ID: | | |
| | City, ST, Zip: | Date Established: | | |
| | *Use a separate sheet if more than two Applicants* | | | |

| C. | Lender Information | | | |
|---|---|---|---|---|
| Lender Name: | Bank of Hope | | Lender ID: | 19017 |
| Address: | 3200 Wilshire Blvd. 7th Floor | City: Los Angeles | ST: CA | Zip: 90010 |
| Lender Contact: | Jongseok Jeon | Ph: (213) 637- 9659 | Cell or Ext: ( ) - | |
| Contact Email: | derek.jeon@bankofhope.com | | Title: SBA Loan Officer | |
| Alternate Contact Information (☑ Check if this contact will be the primary contact for loan processing information) | | | | |
| Alternate Name (if other than Lender): | | Contact Type: ☐ Lender Employee ☐ LSP | | |
| Alternate Contact: | | Ph: ( ) - | Cell or Ext: ( ) - | |
| Alternate Contact Email: | | Title: | | |


EXHIBIT B

| D. | Loan Structure Information | | | | | | | |
|---|---|---|---|---|---|---|---|---|

Amount of Loan Request: $ 180,000  Guarantee %: 50 %  Loan Term in # of Months: 45  Payment: $ 4,601

Rate Structure (rates may have one rate for the full loan amount or separate rate structures for the guaranteed and unguaranteed portions)

| Period | Rate Type | Which Part of Loan | Base Rate | Base Rate | Spread % | Full Rate |
|---|---|---|---|---|---|---|
| 1 | ☑ Variable ☐ Fixed | ☐ Full ☑ Guaranteed ☐ Un-Guaranteed | ☑ Prime ☐ SBA LIBOR ☐ SBA Peg Rate ☐ Fixed Base Rate ☐ Other (explain in Credit Memo) | 5.50 | 2.00 | 7.500 |
| 2 | ☐ Variable ☐ Fixed | ☐ Full ☐ Guaranteed ☐ Un-Guaranteed | ☐ Prime ☐ SBA LIBOR ☐ SBA Peg Rate ☐ Fixed Base Rate ☐ Other (explain in Credit Memo) | | | 0.000 |

Frequency that Rate will Adjust: ☐ Monthly ☐ Quarterly ☐ Calendar Quarter ☐ Annually ☐ Other (explain in Credit Memo)

When will first adjustment occur: (see SOP 50 10 "SBA requirements for SBA Note")

| E. | Complete Project Information (Round to dollars & must be supported in lender credit memo) | | | | |
|---|---|---|---|---|---|
| Use of Proceeds (Sources and Uses) | SBA 7(a) Loan | Other Financing | Borrower Injection | Total for Line | |
| Land Acquisition (☐ with or ☐ without improvements) | $ | $ | $ | $ | 0 |
| ☐ New Construction ☐ Expansion ☐ Renovations | $ | $ | $ | $ | 0 |
| Leasehold Improvements to property owned by others | $ | $ | $ | $ | 0 |
| Machinery & Equipment | $ | $ | $ | $ | 0 |
| Furniture & Fixtures | $ | $ | $ | $ | 0 |
| Inventory Purchase | $ | $ | $ | $ | 0 |
| Working Capital | $ 180,000 | $ | $ | $ | 180,000 |
| Acquire Business (☐ Asset or ☐ Ownership Interest) | $ | $ | $ | $ | 0 |
| Pay off SBA Loan (☐ SID /☐ Other Lender /☐ Both) | $ | $ | $ | $ | 0 |
| Pay Notes Payable (☐ SID /☐ Other Lender /☐ Both) | $ | $ | $ | $ | 0 |
| Pay Accounts Payable | $ | $ | $ | $ | 0 |
| SBA Guarantee Fee | $ | $ | $ | $ | 0 |
| Other (explain): | $ | $ | $ | $ | 0 |
| Other (explain): | $ | $ | $ | $ | 0 |
| Total (sum of last column should match sum of first 3 across): | $ 180,000 | $ 0 | $ 0 | $ | 180,000 |

Will more than $10,000 of the loan proceeds be used for construction/renovation? (If "Yes," SBA Form 601 must be completed.)   ☐ Yes  ☑ No

**F.  Fees paid to others**

Has the Applicant paid or committed to pay a fee to the Lender or a third party to assist in the preparation of the loan application or application materials, or has the Applicant or Lender paid or committed to pay a referral agent or broker a fee?   ☐ Yes  ☑ No

- If "Yes," SBA Form 159(7a) must be completed, signed by all parties and a copy provided to SBA's fiscal and transfer agent after initial disbursement in accordance with SOP 50 10.

**G.  General Eligibility** (If either of the questions below are answered "No," the request is not eligible for an SBA guaranty.)

- Small Business Applicant is (1) an operating business (except for loans to Eligible Passive Companies, discussed below), (2) organized for profit, (3) located in the United States and its territories or possessions, (4) small (as defined by 13 CFR Part 121), and (5) able to demonstrate a need for the desired credit.   ☑ Yes  ☐ No

- The Small Business Applicant's products and/or services are available to the general public.   ☑ Yes  ☐ No

**H.  Credit Not Reasonably Available Elsewhere**

- Lender has assessed the Small Business Applicant's access to credit outside of this SBA-guaranteed loan and determined that such credit is not available elsewhere on reasonable commercial terms from non-Federal sources. The Lender's loan file contains documentation that specifically identifies the factors in the present financing that meet the credit elsewhere test and the Lender's credit memorandum includes the credit elsewhere analysis and supporting documentation to substantiate Lender's determination.   ☑ Yes  ☐ No

SBA Form 1920 (01/18)                                        Page | 2

EXHIBIT $\underline{B}$

## I. Size Analysis

If the Applicant is an existing business that is applying for a SBA loan to acquire another business, the two businesses are combined to determine whether or not the Small Business Applicant is small. If an application is for an EPC/OC, refer to the size determinations under the EPC rule in the current SOP 50 10. If the Small Business Applicant has Affiliates, please provide a list, including Affiliate name and tax ID #, and discuss possible bases of affiliation. If an affiliation exists complete a Size Analysis for each affiliate.

Use this size standard ☑

| | |
|---|---|
| Primary Industry Dine in deli shop | |
| NAICS Code | 722513 |
| Average annual receipts over the last three completed fiscal years per Federal Tax Return (exclude affiliates) | $   920,153 |
| SBA Size Standard based on NAICS (The standards are found in 13 CFR 121.201) | |
| Number of Employees | 9 |

OR    Use the Alternative size standard ☐

| | |
|---|---|
| Tangible Net Worth is (not in excess of $15 million) and | $ |
| Average net income after Federal Income Taxes (excluding any carry over losses) for preceding 2 completed fiscal years is not in excess of $5.0 million. *(The alternative size standard is found at §3(a) of the Small Business Act.)* | $ |

The combined size calculation of applicant and its affiliates meets the size standard for the applicant's primary industry or the size standard for the primary industry of the applicant and its affiliates, whichever is higher (13 CFR 121.104); ☐ True

OR

The combined size calculation of applicant and its affiliates meets the alternative size standard. ☐ True

If size standard is exceeded by no more than 25%, Applicant agrees to use the loan proceeds within a labor surplus area. ☐ True

## J. Required Guarantors

- All owners with an interest of 20% or more in the Small Business Applicant will guarantee the loan. The 20% threshold includes a spouse owning 5% or more when the combined ownership of both spouses is 20% or more. Only ESOPs and/or eligible 401(k) Trusts are excluded from this requirement. (If a person will be executing the note as a borrower in an individual capacity, that person does not also have to execute a personal guarantee.) ☑ True

## K. Associates of the Applicant

### Character

→ Lender has verified that on SBA Form 1919, Question 17 (or C.2.c on EIB-SBA Form 84-1 for EWCP loans) is <u>not</u> answered "Yes," otherwise the loan is not eligible. ☑ True

→ If, on SBA Form 1919, Question 19 (or C.2.c on EIB-SBA Form 84-1 for EWCP loans) is answered "Yes," answer the following:

☐ Lender has verified that the individual who answered "Yes" to Question 19 is currently not on parole or probation. If the answer to this statement cannot be answered "True," the loan is not eligible. ☐ True

- The applicant meets ONE of the following criteria below (if cannot be answered "True", the loan is not eligible):

☐ Lender has retained the supporting information and court documentation, including the original SBA Form 912, in its loan file and determined that all disclosed crimes were misdemeanors fully dispositioned by the court more than 6 months ago and there were no convictions for crimes against minors. ☐ True

☐ Lender submitted SBA Form 912 and all supporting documentation to the SBA field office serving the territory where the Small Business Applicant is located and has subsequently received written clearance of the character issue(s) from SBA headquarters through the SBA field office. ☐ True

OR

☐ Loan is being processed on a delegated basis and the SBA Form 912 and all supporting documentation has been submitted directly to SBA headquarters and Lender has subsequently received written clearance of the character issue(s) from SBA headquarters through the SBA field office. ☐ True

SBA Form 1920 (01/18)    Page | 3


EXHIBIT B

**L.  Types of Ineligible Businesses** (*check the SOP and CFR for current guidance*)

Lender has reviewed the Small Business Applicant and has determined it is not an ineligible business: ☑ True

1. A non-profit Business (for-profit subsidiaries are eligible)
2. A financial business primarily engaged in the business of lending, e.g. banks, life Insurance companies (independent agents may be eligible), finance companies, factoring companies, investment companies and other businesses whose stock in trade is money and which are engaged in financing.
   a. A pawn shop where more than 50% of its revenue for the previous year was from interest on loans.
   b. A mortgage service company where any loans funded <u>are not</u> sold within 14 days of loan closing.
3. A passive business owned by developers or landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds that is not an Eligible Passive Company (discussed below).
   a. A motel, recreational vehicle park, campground, marina or similar type of business that derives more than 50% of its gross annual revenue from transients who stay for periods of time exceeding 30 days.
   b. A business primarily engaged in sub-dividing real property into lots and developing it for resale on its own account or in owning or purchasing real estate and leasing it for any purpose.
4. A business located in a foreign country or owned by undocumented (illegal) aliens.
5. A pyramid sale distribution plan.
6. A business involved in any illegal activity.
7. A business principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs, whether in a religious or secular setting. If the Applicant appears to be connected, associated, or affiliated with a religious organization or to have a religious component, the Lender must complete SBA Form 1971, Religious Eligibility Worksheet.
8. A business that earns 1/3 or more of its gross annual revenue from packaging SBA loans.
9. A business that derives directly or indirectly more than 5% of its gross revenue through the sale of products or services, or the presentation of any depiction or displays, of a prurient sexual nature or that presents any live performances of a prurient nature.
10. A business primarily engaged in political or lobbying activities.
11. A speculative business (such as mining, and research & development).
12. A business that derives more than 1/3 of gross annual revenue from legal gambling, or is a racetrack, casino or otherwise has gambling as its primary reason for being.
13. A private club or business that limits the number of memberships for reasons other than capacity.
14. A Government-owned entity (except for businesses owned or controlled by a Native American tribe, but is a separate legal entity from the tribe).

---

**M.** ☐  **Employee Stock Ownership Plan ("ESOP")** - Complete if the Small Business Applicant is a Qualified Employee Trust or equivalent trust. (All questions below must be answered as TRUE to be eligible.)

- The Qualified Employee Trust (or equivalent trust) meets the requirements and conditions for an ESOP prescribed in all applicable IRS, Treasury and Department of Labor regulations AND the small business will provide the funds needed by the trust to repay the loan and will provide adequate collateral. ☐ True

- Loan will help finance the growth of the Qualified Employee Trust's employer's small business or will purchase ownership or voting control of the employer. ☐ True

- Loan proceeds will be used to purchase: 1) qualified employer securities; or 2) a controlling interest (51% or more) in the employer (ownership and control will vest in the trust by the time the loan is repaid). ☐ True

---

**N.  Citizenship**

The Small Business Applicant is at least 51% owned and controlled by US citizens and/or by persons who meet one of the following conditions (if neither applies, the loan is not eligible).

- ○ The business is at least 51% owned by individuals who are ☑ U.S. citizens and/or who have ☐ Lawful Permanent Resident (LPR) status, whose status the lender has verified with the USCIS through the SBA, AND will control the management and daily operations of the business; ☑ True
  **OR**

- ○ The business is at least 51% owned by aliens with an alien status other than LPR, which the lender has verified with the USCIS through the SBA; the lender has determined that continual and consistent management of the business has been provided by a U.S. citizen or by an LPR, whose status lender has verified with the USCIS through the SBA, for at least one year and will continue indefinitely; AND collateral within the jurisdiction of the U.S. is pledged that meets the requirements of SOP 50 10. (Businesses less than one year old do not meet these requirements.) ☐ True

**EXHIBIT** $\mathcal{B}$

| O. ☐ | **Change of Ownership** – Complete this section for all changes of ownership (including between existing owners) to determine type of business valuation needed and eligibility. | | |
|---|---|---|---|
| If part of the Use of Proceeds will be used to fund or refinance a change in ownership: | | | |
| • | The change will promote the sound development or preserve the existence of the Applicant business. *(If "No," the loan is not eligible.)* | ☐ Yes | ☐ No |
| • | The change is between existing owners of the small business and will result in 100% ownership by the remaining owner(s) or is the purchase of 100% of a business resulting in a new owner and meets the requirements provided in the SOP 50 10. *(If "No," the loan is not eligible.)* | ☐ Yes | ☐ No |
| • | The loan proceeds will not pay off an SBA-guaranteed loan of the seller with the same lender. *(If "No," application may not be processed under delegated authority.)* | ☐ Yes | ☐ No |
| • | The loan proceeds will not finance any amount in excess of the business valuation. *(If "No," the loan is not eligible.)* | ☐ Yes | ☐ No |
| • | A business broker will receive a commission from the sale of the business paid by the Applicant. | ☐ Yes | ☐ No |
| If "Yes," Name of Business Broker Firm: | | Representative: | |
| Firm Address: | | Commission $ | |

| P. Type of Business Valuation Requirements – *(use worksheet to determine what type of business valuation is required)* | | |
|---|---|---|
| Total Purchase Price to be paid to seller per purchase contract: | $ | |
| Less down payment paid to Seller: | -$ | |
| Source & Type of Injection: | Less buyer injection : | -$ |
| Total Amount being Financed (including 7(a), 504, Seller or Other financing) (A): | $ | 0 |
| Appraised Value of Commercial Real Estate being financed in purchase of /or with the business (B): | -$ | |
| Appraised Value of equipment being financed in the purchase of the business (C): | -$ | |
| Value of intangible assets to be Financed  (A) – (B) – (C) = (D): | $ | 0 |

| | |
|---|---|
| If the value of (D) above is $250,000 or less **AND** there is not a close relationship between Buyer & Seller, you have included an internally prepared business valuation that supports the value being paid for the business? **OR** | ☐ |
| If the value of (D) above is over $250,000 **OR** there is a close relationship between Buyer & Seller, you have obtained an independent business valuation from a qualified source that supports the value being paid for the business? (For loans processed under lender's delegated authority, the independent business valuation has been or will be obtained prior to closing/disbursement.) | ☐ |

| Q. Franchise/License/Jobber/Membership or Similar Agreement | | |
|---|---|---|
| • Does the applicant business operate under a Franchise/License/Jobber/Membership or similar Agreement? | ☐ Yes | ☑ No |
| Tradename under the Agreement: | Franchise Identifier Code (if applicable): | |
| Please answer the following statements (if the answer to any statement below is "no," the loan is not eligible): | | |
| ■ Applicant's brand is eligible for SBA financial assistance and either (a) it meets the FTC definition of a franchise and is included on the SBA Franchise Directory, or (b) does not meet the FTC definition of a franchise. | ☐ Yes | ☐ No |
| ■ If Applicant operates under multiple agreements, Lender has determined that all of Applicant's brands are eligible, and those brands that meet the FTC definition of a franchise are on the SBA Franchise Directory. | ☐ Yes | ☐ No |
| ■ For non-delegated loans, if the Applicant's brand is not on the SBA Franchise Directory, Lender has determined that the brand does not meet the FTC definition of a franchise, but is eligible for SBA financial assistance. Lender has explained its determination in its credit memorandum and submitted the agreement and any other documentation required by the brand to the LGPC with its application. | ☐ Yes | ☐ No |
| ■ For delegated loans, if the Applicant's brand is not on the SBA Franchise Directory, Lender has determined that the brand does not meet the FTC definition of a franchise, but is eligible for SBA financial assistance. Lender has explained its determination in its credit memorandum and retained all supporting documentation in its file. | ☐ Yes | ☐ No |

EXHIBIT $B$

| **R.** ☐ | Loan is to an Eligible Passive Company ("EPC") If any statement cannot be answered "True," the loan is not eligible. | |
|---|---|---|
| • | The EPC will use the loan proceeds to acquire or lease, and/or improve or renovate real or personal property (including eligible refinancing) that it leases 100% to one or more OCs for conducting the OC's business, or to finance a change of ownership between existing owners of the EPC. | ☐ True |
| • | The OC is an eligible small business and the proposed use of proceeds would be an eligible use if the OC were obtaining the financing directly. | ☐ True |
| • | The EPC (with the exception of a trust) and the OC each are small under SBA's size standards. | ☐ True |
| • | The EPC is eligible as to type of business, other than being passive. | ☐ True |
| • | The lease between the EPC and OC will be in writing, will have a remaining term at least equal to the terms of the loan (including options to renew exercisable solely by the OC), will be subordinated to SBA's lien on the property and the rents will be assigned as collateral for the loan. The rent or lease payments will not exceed the amount necessary to make the loan payment to the Lender, and an additional amount to cover the EPC's direct expenses of holding the property. *(Lender must obtain an executed copy of the lease prior to any disbursement.)* | ☐ True |
| • | The OC will be a guarantor or a co-borrower. (If loan proceeds include working capital or assets to be owned by the OC, the OC will be a co-borrower.) | ☐ True |
| • | Each 20% or more owner of the EPC and each 20% or more owner of the OC will guarantee the loan. | ☐ True |
| • | The aggregated amount of the SBA portions for this application and for all outstanding loans to the EPC, the OC, and their affiliates does not exceed $3,750,000. *($4,500,000 for International Trade (IT) and EWCP loans - The amount guaranteed for working capital for the IT loan combined with any other outstanding 7(a) loan for working capital cannot exceed $4,000,000.)* | ☐ True |
| • | Neither the EPC nor the OC is a trust, or SBA requirements regarding trusts are met. | ☐ True |

| **S.** | Delegated Processing: If any statement is answered "True," the application is not eligible for processing under PLP, SBA Express, Export Express, PLP-EWCP, or delegated CA authority." | |
|---|---|---|
| • | Lender is aware that the application was previously submitted to SBA under any SBA program, including SBA Express, Export Express, PLP, 7(a) Small Loan, Community Advantage or Standard 7(a). *(Loan is not eligible to be submitted under delegated authority unless the LGPC Director has waived this prohibition because the application was preliminary or incomplete when previously submitted, or has changed materially since the previous submission. If the applicant does not receive an acceptable credit score on a 7(a) Small Loan, non-delegated lenders may submit a Standard 7(a) loan application to the LGPC (following the procedures for loans over $350,000), while delegated lenders may process using their delegated authority (following the procedures for loans over $350,000), or, if the lender is an SBA or Export Express lender, as an Express application.)* | ☐ True |
| • | Lender has made or will make a personal loan to an individual for the purpose of providing an equity injection into the business. | ☐ True |
| • | Loan will finance the sale of the participating lender's Other Real Estate Owned (OREO). *(If "Yes," loan is not eligible for delegated processing and must contain the additional documentation and information required by SOP 50 10.)* | ☐ True |
| • | Loan will be collateralized by commercial property that will not meet SBA's environmental requirements OR that will require use of a non-standard indemnification agreement. | ☐ True |

| **T.** | Prior Loss to Government/Delinquent Federal Debt: If any statement is answered "True," loan is not eligible, unless waived by SBA for good cause. | |
|---|---|---|
| • | Applicant business previously defaulted on a Federal loan or Federally-assisted financing that resulted in the Federal government, or any of its departments or agencies, sustaining a loss, including any compromise agreement with any such agency/department. | ☐ True |
| • | Another business owned or controlled by any Associate of the Small Business Applicant or guarantor defaulted on a Federal loan (or guaranteed a loan which was defaulted) and caused the Federal government, or any of its agencies, or departments to sustain a loss in any of its programs, including any compromise agreement with any such agency/department. | ☐ True |
| • | An Associate of the Small Business Applicant or guarantor is currently delinquent on any Federal debt. | ☐ True |



EXHIBIT B

| U. | Program Specific Requirements/Limitations |
|---|---|

☐ **Community Advantage (loan amount is $250,000 or lower)**

| | |
|---|---|
| • If the loan is being processed through Community Advantage, SBA Form 2449, Community Advantage Addendum, must be completed and attached to SBA Form 1919, Borrower Information Form. | ☐Yes  ☐No |
| • Applicant meets the minimum credit score requirement for Community Advantage loans. (If no, loan must be submitted under Standard 7(a) guidelines for loans over $350,000.) | ☐Yes  ☐No |

☑ **7(a) Small Loan (loan amount is $350,000 or lower)**

| | |
|---|---|
| • Applicant meets the minimum credit score requirement for 7(a) Small loans. (If the applicant does not receive an acceptable credit score, non-delegated lenders may submit a Standard 7(a) loan application to the LGPC (following the procedures for loans over $350,000), while delegated lenders may process using their delegated authority (following the procedures for loans over $350,000), or, if the lender is an SBA or Export Express lender, as an Express application.) | ☑Yes  ☐No |
| Lender's Credit Memorandum includes: | ☑Yes  ☐No |
| • A brief description of the history of the business and the management team of the company; Owner/Guarantor analysis; confirmation of Lender's collection of business tax returns, and verification and reconciliation of the applicant's financial data against income tax transcripts received from the IRS; a determination that equity and pro-forma debt-to-worth are acceptable based on Lender's written policies and procedures for similarly-sized, non-SBA guaranteed commercial loans; a list of collateral and its estimated value (if secured); and the impact any affiliates may have on the applicant's repayment ability. | |

☐ **CAPLine - If the loan is a CAPLine, please complete the following:**

| | | |
|---|---|---|
| ☐ Seasonal | Applicant qualifies under standard 7(a), has been in operation for at least 12 calendar months and is able to demonstrate a definite pattern of seasonal activity. | ☐Yes  ☐No |
| ☐ Builders | Applicant qualifies under standard 7(a), is a construction contractor or homebuilder under NAICS codes 236220, 236115, 236116, or 236118 with a demonstrated managerial and technical ability in profitable construction or renovation, will either perform the construction/renovation work or manage the job with at least one supervisory employee on the job site during the entire construction phase, will conduct prompt and significant renovations, as defined in SOP 50 10, and has demonstrated a successful performance record in bidding and completing construction/renovation at a profit within the estimated construction period, is able to demonstrate prior prompt payments to suppliers and subcontractors, and the prior successful performance have been of comparable type and size to the proposed project. | ☐Yes  ☐No |
| ☐ Contract | Applicant qualifies under standard 7(a), is able to demonstrate an ability to operate profitably based upon the prior completion of similar contracts, possesses the overall ability to bid, accurately project costs, perform the specific type of work required by the contract(s), and has the financial capacity and technical expertise to complete the contract on time and at a profit. | ☐Yes  ☐No |
| ☐ Working Capital | Applicant qualifies under standard 7(a) and generates accounts receivable (not notes receivable) and/or has inventory. | ☐Yes  ☐No |

**V. Leasing and Leasehold Improvements**

**Leasing part of new construction to another business**

☐ Some of the Use of Proceeds are for construction of (or the refinancing of the construction for) a new building. If checked, answer the following questions:  *(If any of the questions below cannot be answered as "TRUE," then the loan is not eligible.)*

| | |
|---|---|
| • If building will contain rental space, Applicant (or Operating Companies) will permanently occupy at least 60% of the rentable property for the term of the loan; lease long term no more than 20% of the rentable property to one or more tenants; plans to occupy within three years some of the remaining rentable property not immediately occupied or leased long term; and plans to occupy within ten years all of the rentable property not leased long term. | ☐True |
| • Community improvements do not exceed 5% of the loan amount. | ☐True |
| • If refinancing a construction loan, the construction loan is not with the same lender. *If this question cannot be answered "True," then loan may not be processed under delegated authority.* | ☐True |
| • Loan proceeds will not be used to remodel or convert any rental space in the property. | ☐True |

**Leasing part of an existing building to another business**

☐ To provide funds for the acquisition of land or existing building or for renovation or reconstruction of an existing building. If checked, answer the following questions: *(If any of the questions below cannot be answered as "TRUE," then the loan is not eligible.)*

| | |
|---|---|
| • Applicant (or Operating Companies) will occupy at least 51% of the rentable property. | ☐True |
| • Loan proceeds will not be used to remodel or convert any rental space in the property. | ☐True |

EXHIBIT B

| | | |
|---|---|---|
| **Leasehold Improvements made to a building owned by an unrelated third party** | | |

☐ To provide funds for or refinance leasehold improvements. If checked, answer the following questions:

- Loan proceeds will be used to improve space occupied 100% by Applicant. *(If not "True," loan is not eligible.)* ☐True
- The building where improvements will be made is owned by any principals of the Operating Company. *(If "True," the loan is only eligible if structured as an EPC/OC loan unless building and business are both owned as a sole proprietorship.)* ☐True

## W. Export Loan Programs

- Applicant business is an exporter, projected export sales supported by this loan? $ ☐Yes ☐No

☐ **Export Express**

- The applicant business has been operating, although not necessarily in exporting, for at least 12 full months. If less than 12 months, the applicant's key personnel have clearly demonstrated export expertise and substantial previous successful business experience, AND the lender processes the Export Express loan using conventional commercial loan underwriting procedures and does not rely solely on credit scoring or credit matrices to approve the loan. For non-bank lenders that do not have a conventional loan portfolio, a written approval from the Office of Credit Risk Management for their underwriting procedures has been has been obtained prior to making the Export Express loan. ☐Yes ☐No
- Applicant has demonstrated to lender that loan proceeds will enable it to enter a new export market or expand an existing export market. ☐Yes ☐No
- Loan proceeds will be used for an export development activity as defined in the SOP 50 10. ☐Yes ☐No
- If proceeds are being used to finance indirect exports, the applicant has provided certification to lender from the applicant's domestic customer (typically in the form of a letter, invoice, order or contract) that the goods or services are in fact being exported. ☐Yes ☐No
- Proceeds will not be used to finance overseas operations, except for the marketing and/or distribution of products/services exported from the U.S. ☐Yes ☐No
- If proceeds are being used to finance specific export transactions (including indirect exports), lender has determined that U.S. companies are authorized to conduct business with the proposed country(ies) to which the goods or services will be shipped and has reviewed the Ex-Im Bank Country Limitation Schedule (CLS) to verify that the U.S. Government has not restricted trade with any foreign country that the applicant does business with (i.e., no country is identified on the CLS by Note #7). ☐Yes ☐No
- Loan is an Export Express loan and will not refinance an existing SBA-guaranteed loan. ☐Yes ☐No

☐ To provide funds to guarantee or support a standby letter of credit. *(If checked, answer the following questions.) (If both are "No," the loan is not eligible.)*

- Loan is an Export Express loan ☐Yes ☐No
- Loan is an EWCP loan ☐Yes ☐No

☐ **Export Working Capital Program (EWCP)** - In addition to EIB-SBA Form 84-1, Joint Application for Export Working Capital Guarantee, the following questions must be answered. If "No," loan is not eligible for EWCP.

- Applicant has been in business for at least 12 months. ☐Yes ☐No
- If Applicant is an export management company (EMC) or export trading company (ETC), the EMC or ETC will take title to the goods or services being exported and the EMC or ETC has no bank ownership. ☐Yes ☐No

☐ **International Trade Loan (IT)** *(If any question below is answered "No," loan is not eligible for IT.)*

- The loan proceeds will be used solely for the purpose of 1) financing the acquisition, construction, renovation, modernization, improvement, or expansion of productive facilities or equipment to be used in the United States in the production of goods and services involved in international trade; 2) the refinancing of existing indebtedness that is not structured with reasonable terms and conditions, including any debt that qualifies for refinancing under the Debt Refinance section below; or 3) working capital [of up to $4,000,000 guaranteed amount] when IT loan is for working capital. ☐Yes ☐No
- The small business concern is either 1) in a position to expand existing export markets or develop new export markets; or 2) is confronting increased competition with foreign firms in the relevant market and is injured by such competition. ☐Yes ☐No
- Lender will 1) take a first lien on the fixed assets financed (or re-financed) with this loan or on other assets of the small business concern; or 2) take a second lien on the fixed assets financed (or re-financed) with this loan or on other assets of the small business concern and Lender has determined that the second lien provides adequate assurance of the payment of the loan. ☐Yes ☐No
- Collateral is located in the United States, its territories and possessions. ☐Yes ☐No

SBA Form 1920 (01/18)                        Page | 8

EXHIBIT B

| International Trade Loan (IT) *(If any question below is answered "No," loan is not eligible for IT.)* | |
|---|---|
| • Lender has reviewed the Ex-Im Bank Country Limitation Schedule (CLS) to verify that the U.S. Government has not restricted trade with any foreign country that the applicant does business with (i.e., no country is identified on the CLS by Note #7). | ☐Yes ☐No |

**X.  Debt Refinancing - for each debt being refinanced.**

| | |
|---|---|
| Include a COMPLETE BUSINESS DEBT SCHEDULE that matches the most current interim business financial statement. | ☐ Included |
| Include a copy of all supporting documentation for each debt to be refinanced *(e.g., note, security agreement, lease).* For credit card debt provide a copy of the most recent credit card statement evidencing the name the debt is in and the current balance. *(Lenders must follow the procedures as outlined in the current SOP50 10 for documenting their files completely for any debt being refinanced.)* | ☐ Included for each debt being refinanced |
| • Demonstrate that refinancing will provide a substantial benefit to Applicant of at least 10% needed improvement to cash flow. If more than one debt is refinanced, the new debt will have at least a 10% cash flow improvement over the combined cash flow of the debt being refinanced. (This does not apply if the refinanced debt is a demand note, involves a balloon payment, credit card obligation used for business related purposes, or revolving line of credit (short term or long-term)). *(For CA loans the lender must demonstrate either: a 10% improvement in cash flow, or that the CA loan exceeds the amount being refinanced by at least $5,000 or 25%, whichever is greater.)* | ☐ Included for each debt being refinanced |
| AND | |
| • Existing debt no longer meets the needs of the Applicant. | ☐ Included for each debt being refinanced |
| • Proceeds will not pay a creditor in a position to sustain a loss causing a shift to SBA of all or part of a potential loss from an existing debt. | ☐True |
| • The application is being processed under SBA Express and the transaction is the purchase of an existing business that has an existing SBA loan that is not with the requesting SBA Express lender. | ☐True |
| • The application is a Working Capital CAPLine, the debt is an existing SBA-guaranteed line of credit that is not with the requesting lender and all other requirements of debt refinancing in SOP 50 10 are met *(if the existing SBA-guaranteed line of credit is same institution debt, the lender's credit exposure will not be reduced and the loan cannot be processed using delegated authority, but must be submitted to the LGPC in accordance with SOP 50 10).* | ☐True |
| • The application is being processed under 7(a) Small Loan, Standard 7(a), PLP, or the CA Pilot Program, the debt is an existing SBA-guaranteed loan that is not same institution debt and the lender or borrower has obtained evidence that the lender currently holding the debt is unwilling or unable to modify the current payment terms or provide an increase or a second loan. | ☐True |
| For Same Institution Debt ("SID") Refinancing, if the debt being refinanced is between the Applicant and the requesting SBA lender meets one of the following conditions: | |
| ☐ This application is being processed under SBA Express and the debt has been current (no payment beyond 29 days past due) for at least the last 36 months AND the new loan will not reduce the lender's existing credit exposure to the borrower. | ☐True |
| ☐ This application is being processed under PLP and the debt is either an interim loan that has been made for other than real estate construction purposes and was approved by the lender within 90 days prior to the issuance of a PLP loan number, or the debt is a construction loan that has not been disbursed. | ☐True |
| ☐ This application is being processed under 7(a) Small Loan or Standard 7(a) and the lender has provided a transcript of account for the past 36 months or the life of the loan, whichever is less and the lender has explained any late payments and/or late charges that have occurred during the last 36 months. | ☐True |
| ☐ The loan is being processed under the CA Pilot Program and the lender has provided a transcript showing due dates and 6 months of timely payments for the most recent six-month period. (If there are any late payments (payments beyond 29 days of the due date) in the most recent 6 month period, the debt may not be refinanced with a CA loan.) | ☐True |
| ☐ The application is being processed under 7(a) Small Loan, Standard 7(a) or the CA Pilot Program, the debt is an existing SBA-guaranteed loan that is same institution debt that has been sold on the secondary market and the investor is unwilling to agree to modified terms *(such applications cannot be processed under PLP authority or a CA Lender's delegated authority).* | ☐True |

**EXHIBIT** 

| Other Debt Refinancing Questions: | |
|---|---|
| • Loan will not refinance debt to a Small Business Investment Company *(SBIC)*. | ✓ True |
| • Loan will not refinance an existing 504 loan unless it meets the requirements of debt refinancing in Subpart B, Chapter 2 of SOP 50 10 and either: 1) both the Third Party Loan and the 504 loan are being refinanced; or 2) the Third Party Loan has been paid in full and the 504 loan needs to be refinanced as part of a larger transaction to provide funding for expansion of or renovations to the Project property. *(Any applicable 504 prepayment penalties apply and refinancing a 504 loan may not be processed under delegated authority.)* | ✓ True |
| • Loan will not repay third party financing for any existing 504 project. | ✓ True |
| • Loan will not repay delinquent IRS withholding taxes, sales taxes or similar funds held in trust. | ✓ True |
| • Loan will not refinance any seller take-back financing of less than 24 months following the change of ownership. | ✓ True |
| • Loan will refinance seller take-back financing that is and has been current for the past 24 months. | ✓ True |

### SBA Certification to Financial Institution under Right to Financial Privacy Act (12 U.S.C. 3401)

By signing SBA Form 1919, Borrower Information Form in connection with this application for an SBA-guaranteed loan, the applicant certifies that it has read the Statements Required by Law and Executive Order, which is attached to SBA Form 1919. As such, SBA certifies that it has complied with the applicable provisions of the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401) and, pursuant to that Act, no further certification is required for subsequent access by SBA to financial records of the applicant/borrower during the term of the loan guaranty.

### Statement Regarding Lobbying (applicable only to loans exceeding $150,000)

If any funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this commitment providing for the United States to guarantee a loan, the Lender will complete and submit Standard Form LLL, "Disclosure of Lobbying Activities," in accordance with 13 CFR Part 146. Lender acknowledges submission of this disclosure is a prerequisite for making or entering into this transaction imposed by Section 1352, Title 31, U.S. Code, and that any person who fails to file or amend a declaration required to be filed or amended will be subject to a civil penalty in the amounts set forth in 13 CFR §146.400.

### Lender Certification

On behalf of my Lending Institution,

- I certify that my institution has complied and is familiar with SBA Loan Program Requirements, that we have accurately and correctly completed the Lender's Application for Guaranty for All 7(a) Programs on behalf of the Lender, that the above information is true and correct, to the best of our knowledge, and that we have exercised due diligence to obtain the true and correct information.

- I approve this application to SBA subject to the terms and conditions stated in this and the attached documents. Without the participation of SBA, to the extent applied for, we would not be willing to make this loan, and, in our opinion, the financial assistance approved is not otherwise available on reasonable terms.

- I certify that the Small Business Applicant is an eligible business and lender's credit file contains the documentation that supports the Lender's determination of eligibility per SOP 50 10.

- For applications submitted under delegated authority, I am aware and acknowledge that SBA will not review eligibility prior to issuing an SBA loan number and that if an SBA loan number is assigned and SBA later learns that the loan is not eligible, SBA may deny liability on its guarantee.

- For loans with a Change of Ownership (including existing owners)
    - o   All Seller financial information has been signed and dated by the Seller and has been verified against IRS tax transcripts as set out in SOP 50 10. Where there is an acquisition of a division or a segment of an existing business, other forms of verification may be used in lieu of the 4506-T (*e.g.*, Sales tax payment records);

- I approve and certify that the Applicant is a small business according to the standards in 13 CFR Part 121, the loan proceeds will be used for an eligible purpose, and the owners and managers of the applicant business are of good character.


EXHIBIT B

- I certify that:

  - None of the Lender's Associates\*, including but not limited to its employees, officers, directors, or substantial stockholders (more than 10%) has a financial interest in the Applicant.

  - No Lender or Associate of Lender has a real or apparent conflict of interest with Applicant, any of Applicant's Associates, or any of the close relatives of Applicant's Associates.

  - No Lender or Associate or close relative of an Associate of the lender has a significant direct or indirect financial or other interest in the applicant, or has had such an interest within 6 months prior to the date of the application.

  - No Associate of a Lender is incarcerated, on parole, or on probation or is a convicted felon or has an adverse final civil judgment (in a case involving fraud, breach of trust, or other conduct) that would cause the public to question the Lender's business integrity.

  - No Lender or any Associate of Lender has accepted funding from a source that restricts, prioritizes, or conditions the types of small businesses that Lender may assist under an SBA program or that imposes any conditions or requirements upon recipients of SBA assistance inconsistent with SBA's loan programs or regulations.

  - Neither the Applicant, an Associate of Applicant, close relative nor household member\*\* of an Associate of Applicant is required to invest in Lender.

  - None of the loan proceeds will be used to acquire space in a project for which lender has issued a real estate forward commitment.

  \*  Associate of a Lender is an officer, director, key employee, or holder of 20% or more of the value of the Lender's stock or debt instruments.

  \*\* A "household member" of an SBA employee includes: a) the spouse of the SBA employee; b) the minor children of said individual; and c) the blood relatives of the employee, and the blood relatives of the employee's spouse who reside in the same place of abode as the employee. [13 CFR § 105.201(d)]

| | | | |
|---|---|---|---|
| Authorized Lender Official: | _(signature)_ Signature | Date: | 12/27/2019 |
| Type or Print Name: | Jongseok Jeon | Title: | SBA Loan Officer |

## FOR PLP SUBMISSIONS ONLY (in addition to above):

- I approve and certify that the applicant is a small business according to the standards in 13 CFR Part 121, the loans proceeds will be used for an eligible purpose, and the owners and managers of the applicant business are of good character.

| | | | |
|---|---|---|---|
| Authorized Lender Official: | _(signature)_ Signature | Date: | 12/27/2019 |
| Type or Print Name: | Sylvester Kim | Title: | SVP & SBA Manager |

NOTE: According to the Paperwork Reduction Act, you are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated burden for completing this form, including time for reviewing instructions, gathering data needed, and completing and reviewing the form is 25 minutes per response. Comments or questions on the burden estimates should be sent to U.S. Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Rm. 10202, Washington DC 20503. PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.

EXHIBIT B



U.S. DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE
WASHINGTON, DC 20227

ACTING ON BEHALF OF
U.S. SMALL BUSINESS ADMINISTRATION
CHIEF INFORMATION OFFICER
CERTIFICATE OF INDEBTEDNESS

1825 Connecticut Ave Deli Inc dba Soho Café & Market
1825 Connecticut Ave NW
Washington, DC 20009
EIN        3481

Jinho Kim
13906 Springhouse Court
Clifton, VA 20124
SSN:XXX-XX-1321

### TRFM16036099

I hereby certify, as part of my duties with the U.S. Department of the Treasury, Bureau of the Fiscal Service, Disbursement and Debt Management (Treasury), including referring matters to the U.S. Department of Justice (DOJ) for litigation, I am a custodian of records of certain files sent by the U.S. Small Business Administration (SBA) to Treasury for collection actions. As a custodian of records for Treasury, I have care and custody of records relating to the debt owed by 1825 Connecticut Ave Deli Inc dba Soho Café & Market and Jinho Kim (DEBTORS) to SBA.

The information contained in this Certificate of Indebtedness is based on documents created by an employee or contractor of SBA based on his/her knowledge at or near the time the events were recorded, or by an employee or contractor of Treasury based on his/her knowledge at or near the time the events were recorded. Treasury's regular business practice is to receive, store and rely on the documents provided by SBA, when debts are referred to Treasury for collection activities, including litigation. Further, I certify that I am familiar with Treasury's record keeping practice, including the receipt of files from SBA.

On February 6, 2019, the DEBTOR executed a promissory note and unconditional guarantee loan agreement for $180,000.00, with interest accruing at variable rates, except as otherwise provided within the Promissory Note with Bank of Hope (LENDER).

The DEBTOR became delinquent on the obligation on July 6, 2020, with a balance due of $124,032.37. Due to the delinquency, the SBA became holder of the Note. SBA referred the debt to Treasury for collection on January 18, 2023.

On June 26, 2025, Treasury referred the debt to DOJ for litigation and collection with a principal amount due of $124,032.37 & daily interest of $17.84. As of June 27, 2025, the DEBTOR is indebted to the United States in the amounts stated as follows:





**U.S. DEPARTMENT OF THE TREASURY**
**BUREAU OF THE FISCAL SERVICE**
**WASHINGTON, DC 20227**

**ACTING ON BEHALF OF**
**U.S. SMALL BUSINESS ADMINISTRATION**
**CHIEF INFORMATION OFFICER**
**CERTIFICATE OF INDEBTEDNESS**

| | |
|---|---|
| Principal: | $124,032.37 |
| Interest(@5.25%): | $ 16,987.96 |
| Admin Fees: | $ 50,883.63 |
| **Total:** | **$191,903.96** |

The balance stated in the debt listed above are current as of June 27, 2025 including any applicable interest, penalties, administrative fees, and Treasury & DOJ fees (pursuant to 31 U.S.C. 3717(e) and 3711(g)(6), (7); 31 C.F.R. 285.12(j) and 31 C.F.R. 901.1(f); and 28 U.S.C. 527, note).

Pursuant to 28 U.S.C. § 1746(2), I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief based upon information provided by SBA and information contained in Treasury's records.

6/27/2025

X ____Ashleigh Edmonds____

Signed by: Bureau of the Fiscal Service

Ashleigh Edmonds
Financial Program Specialist
U.S. Department of the Treasury
Bureau of the Fiscal Service
Date: June 27, 2025

**EXHIBIT** _C_   2